

**DLA Piper** LLP (US)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020-1104
www.dlapiper.com

Jonathan D. Siegfried
jonathan.siegfried@dlapiper.com
**T** 212.335.4925
**F** 212.884.8477

February 12, 2018

*BY ECF*

The Honorable Robert M. Levy
United States Magistrate Judge
District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     **Re:**    *Sholom Goldstein, et al. v. Arab Bank, PLC*, No. 16-CV-01681 (ILG) (RML)

Dear Magistrate Judge Levy:

    We represent Defendant Arab Bank plc ( the "Bank") and write in compliance with Your Honor's Order requiring that we update you on the status of the appeal in *Linde v. Arab Bank, PLC*, 16-2119(L). As you are aware, the complaint brought by the *Goldstein* plaintiffs is patterned on the complaint in *Linde* and alleges that the Bank was collaterally estopped from denying liability to them by reason of the judgment against the Bank entered in *Linde*. (Compl. Para. 2).

    Although the Bank previously advised current counsel for the *Goldstein* plaintiffs (as it did prior counsel) that there was no collateral estoppel effect, that issue has now been rendered moot. On February 9, 2018, the Second Circuit issued its opinion vacating the *Linde* judgment and remanding that case for further proceedings. A copy of the Court's opinion and order is attached herewith.

               Very truly yours,

               **DLA Piper LLP (US)**

               Jonathan D. Siegfried
               *Counsel for Defendant Arab Bank plc*

cc:
Michael R. Rudick
Herzfeld & Rubin, P.C.
125 Broad Street
New York, N.Y. 10004
Tel: 212-471-8500
*Counsel for Plaintiffs*

16-2119-cv (L)
*Linde v. Arab Bank, PLC*

# In the
# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2016

Nos.  16-2119-cv (L), 16-2098-cv (CON), 16-2134-cv (CON)

LINDE, *et al.,*
*Plaintiffs-Appellees,*

v.

ARAB BANK, PLC,
*Defendant-Appellant.*[1]

---

On Appeal from the United States District Court
for the Eastern District of New York

---

ARGUED: MAY 16, 2017
DECIDED: FEBRUARY 9, 2018

---

[1] Consistent with this court's order of July 22, 2016, *see* Dkt. Nos. 34–36, we use the short-form caption for purposes of this opinion.

Before:

RAGGI and CARNEY, *Circuit Judges*, and KAPLAN, *District Judge*.[2]

---

Defendant Arab Bank, PLC, appeals from a judgment entered in the United States District Court for the Eastern District of New York (Cogan, J.), in the stipulated total amount of $100,000,000 following a jury verdict holding the bank liable under the Antiterrorism Act ("ATA"), *see* 18 U.S.C. § 2333, for injuries sustained by plaintiffs or their relatives during terrorist attacks in Israel conducted by Hamas. Arab Bank argues that (1) the jury was not properly instructed on the "international terrorism" element of an ATA claim, (2) the bank was prejudiced by unwarranted discovery sanctions affecting the presentation of evidence, and (3) the trial evidence was legally insufficient to prove causation. We agree that instructional error requires vacatur and remand. We are not persuaded to affirm by plaintiffs' argument that the error is rendered harmless by either the jury's finding of causation or Congress's post-trial enactment of the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 144-222, 130 Stat. 854 (Sept. 28, 2016) (codified at 18 U.S.C. § 2333(d)(2)). Nor are we persuaded to reverse by Arab Bank's sufficiency challenge to proof of causation. A settlement agreement between the parties forgoing retrial in the event of vacatur and remand makes it unnecessary for us to decide whether the bank's

---

[2] Judge Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

challenges to the causation charge or the district court's discovery sanctions also warrant vacatur and remand.

**VACATED** and **REMANDED** for further proceedings consistent with this opinion.

———————

PAUL D. CLEMENT, Kirkland & Ellis, LLP, Washington, D.C. (Michael H. McGinley, Nicholas T. Matich, Kirkland & Ellis, Washington, D.C.; Jonathan D. Siegfried, Kevin Walsh, Douglas W. Mateyaschuk, DLA Piper LLP, New York, New York, *on the brief*), *for Defendant-Appellant Arab Bank, PLC.*

PETER RAVEN-HANSEN, Osen LLC, Hackensack, New Jersey (Gary M. Osen, Ari Ungar, Aaron Schlanger, Osen LLC, Hackensack, New Jersey; Shawn Naunton, Zuckerman Spaeder LLP, New York, New York, *on the brief*), *for Plaintiffs-Appellees Chana Freedman, Eugene Goldstein, Lorraine Goldstein, Michael Goldstein, Richard Goldstein, and Barbara Goldstein-Ingardia.*

Michael E. Elsner, John M. Eubanks, Motley Rice LLC, Mount Pleasant, South Carolina, *for Plaintiffs-Appellees Ayelet Attias, Yossef Cohen, Yehuda Eliyahu, and Raheli Laham.*

James P. Bonner, Stone Bonner & Rocco LLP, New York, New York; John M. Eubanks, Motley Rice LLC, Mount Pleasant, South Carolina; Noel J. Nudelman, Heideman Nudelman & Kalik PC, Washington, D.C.; Lee S. Shalov, McLaughlin & Stern, LLP, New York, New York; Mark S. Werbner, Sayles Werbner, Dallas, Texas, *for Plaintiffs-Appellees Philip Litle, Elishua Litle, Hannah Litle, Heidi Litle, Josiah Litle, and Noah Litle.*

Neal Kumar Katyal, Jessica L. Ellsworth, Mary Helen Wimberly, Hogan Lovells US LLP, Washington D.C., *for Amicus Curiae The Hashemite Kingdom of Jordan.*

Steven T. Cottreau, David D. DiBari, Jeffrey J. Golimowski, Clifford Chance US LLP, Washington D.C., *for Amicus Curiae The Institute of International Bankers.*

———————

REENA RAGGI, *Circuit Judge*:

The sixteen named plaintiffs on this consolidated appeal are victims, or the relatives of victims, of three terrorist attacks perpetrated in Israel by Hamas between March 2002 and June 2003. Together with hundreds of other alleged victims and the surviving relatives of victims of alleged Hamas attacks, the named plaintiffs commenced actions in the United States District Court for the

Eastern District of New York to recover compensatory damages from Arab Bank, PLC ("Arab Bank" or "bank") under that provision of the Antiterrorism Act of 1990 ("ATA") affording a civil remedy. *See* Pub. L. No. 1-1-519, § 132, 104 Stat. 2240 (1990) (codified at 18 U.S.C. § 2333(a)). Plaintiffs charged the bank with facilitating the attacks at issue by knowingly providing financial services to Hamas, Hamas-controlled charities, and the Saudi Committee for the Support of the Intifada Al-Quds ("Saudi Committee"), an entity that made payments to the families of Hamas suicide bombers. Following trial, at which the jury found Arab Bank liable for injuries resulting from twenty-four terrorist attacks, including the three here at issue, the district court (Brian M. Cogan, *Judge*) substantially denied Arab Bank's motions for judgment notwithstanding the verdict and for a new trial pursuant to Fed. R. Civ. P. 50 and 59. *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015).[3] Rather than proceed to a scheduled bellwether trial on damages, however, the parties stipulated to the entry of a total damages award of $100,000,000, which the district court certified as final pursuant to Fed. R. Civ. P. 54(b). At the same time, the parties entered into a confidential settlement agreement providing for the bellwether plaintiffs to be paid various total monetary amounts depending on whether the certified judgment was affirmed, reversed, or vacated

---

[3] The district court granted Arab Bank relief from the jury's verdict as to two of the twenty-four terrorist attacks on which the jury found liability, based on an absence of sufficient evidence of attribution to Hamas. *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d at 330–31. Neither that ruling nor those attacks are at issue on this appeal.

on direct appeal. The parties agreed to forgo retrial in the event of vacatur and remand, as well as any further challenges to the judgment in any event.[4]

On this appeal, Arab Bank argues that it was wrongfully denied judgment notwithstanding the verdict or a new trial because (1) the district court failed correctly to instruct the jury on the ATA's "act of international terrorism" element as defined in 18 U.S.C. § 2331(1); (2) the bank was unfairly prejudiced by discovery sanctions that affected the presentation of evidence at trial; and (3) the trial evidence was insufficient as a matter of law to permit a jury finding that the bank's provision of financial services was either a proximate or but-for cause of the plaintiffs' injuries, the latter standard of which Arab Bank insists is in fact required to prove an ATA claim.

For the reasons stated herein, we conclude that instructional error as to the ATA's international terrorism element requires vacatur and remand. We are not persuaded by plaintiffs' argument that we can affirm in any event because any instructional error was rendered harmless by the jury's causation finding as well as by Congress's post-trial enactment of the Justice Against Terrorism Act ("JASTA"), Pub. L. No. 144-222, 130 Stat. 854 (Sept. 28, 2016), which extends ATA liability from those who themselves commit acts of international terrorism to those who aid and abet such acts by others, *see* 18 U.S.C. § 2333(d)(2). Nor are we persuaded to reverse

---

[4] The Confidential Appendix detailing the parties' settlement agreement is unsealed only to the extent referenced in this opinion.

by Arab Bank's sufficiency challenge to the proof of causation because causation would not be in dispute if the bank is considered an aider and abettor of Hamas acts of terrorism, as plaintiffs can now maintain under JASTA. As Arab Bank concedes, our determination that instructional error warrants vacatur and remand makes it unnecessary for us to decide whether any of the bank's other challenges warrant such relief because the parties have entered into a settlement agreement that forgoes retrial on vacatur and remand in lieu of a specified total money payment to the bellwether plaintiffs.

Accordingly, based on instructional error, we **VACATE** the challenged judgment and **REMAND** this case to the district court for such further proceedings as are consistent with this opinion.

## BACKGROUND

### I. Plaintiffs' ATA Claims

Plaintiffs sue for injuries sustained during three Hamas-associated attacks in Israel: (1) the March 2002 bombing of Café Moment, a coffee shop in downtown Jerusalem; (2) the March 2003 bombing of transit bus no. 37 in Haifa; and (3) the June 2003 machine-gun ambush of a family driving on Route 60 near Jerusalem. Plaintiffs allege that these attacks arose in the context of the "Second Intifada," a period of intensified violence by Palestinian terrorist groups in the aftermath of failed peace negotiations between Israel and the Palestinian Authority in September 2000. Among those carrying out such violence were suicide bombers

supported by terrorist and fundamentalist groups, including the Islamic Resistance Movement, also known as Harakat al-Muqawama al-Islamiya, or "Hamas," and its affiliates. For more than two decades, the United States has formally identified Hamas as a foreign terrorist organization. *See* 18 U.S.C. § 2339B(g)(6); 8 U.S.C. § 1189(a)(1), (d)(4); Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52,650 (Oct. 8, 1997).

The ATA affords a civil action for damages to United States nationals injured by acts of international terrorism. Specifically, it states that,

> [a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).

The ATA defines "international terrorism" to mean,

activities that--

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

(B) appear to be intended--

(i) to intimidate or coerce a civilian population;

(ii) to influence the policy of a government by intimidation or coercion; or

(iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

*Id.* § 2331(1).

Initially, the ATA afforded civil relief only against the principals perpetrating acts of international terrorism. It provided no civil action against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others. *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (holding that ATA's "statutory silence on the subject of secondary liability means there is none"); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123–24 (2d Cir. 2013). On September 28, 2016, however, Congress enacted JASTA, which expands ATA civil liability to reach "any person who aids and abets, by knowingly providing substantial assistance [to], or who conspires with the person who committed such an act of international terrorism." 18 U.S.C. § 2333(d)(2). JASTA expressly states that such secondary liability

9

claims are not temporally limited to terrorist acts occurring after that statute's enactment. Rather, aiding and abetting and conspiracy claims can be asserted "as of the date on which such act of international terrorism was committed, planned, or authorized." *Id.* An accompanying statutory note further states that JASTA's amendment to the ATA applies to any civil action, "(1) pending on, or commenced after the date" of JASTA's enactment; and "(2) arising out of an injury . . . on or after September 11, 2001." *Id.* at Statutory Note (Effective and Applicability Provisions).

Plaintiffs commenced their ATA actions against Arab Bank in July 2004, *i.e.*, before JASTA's enactment. Accordingly, so much of their claim as charged Arab Bank as an aider and abettor of Hamas acts of terrorism was dismissed. Nevertheless, plaintiffs pursued their claim on a theory that the bank's provision of financial services to Hamas, its leaders, operatives, and affiliated charities itself constituted an act of international terrorism. In support, they relied on 18 U.S.C. § 2339B, which makes it a felony knowingly to provide material support to a designated foreign terrorist organization and recognizes the provision of financial services to such an organization as a form of material support, *see id.* § 2339A(b)(1), B(g)(4).[5]

---

[5] Soon after these actions were filed, the Office of the Comptroller of the Currency and the Financial Crimes Enforcement Network investigated Arab Bank's New York branch for alleged failures to monitor or report suspected terror financing, resulting in a $24 million fine and the cessation of U.S.-dollar clearing by the bank.

## II.    Procedural History

### A. Discovery Sanction

Ensuing discovery was protracted in part by Arab Bank's refusal to produce certain requested account records and documents on grounds that such production would require it to violate the bank-secrecy laws of other countries, including Lebanon and Egypt.[6] This prompted supervising Magistrate Judge Viktor V. Pohorelsky, in 2009, to recommend a permissive inference sanction against Arab Bank that would allow a jury to infer that the bank had provided financial services to terrorists between 1994 and 2004, and that would preclude the bank from offering into evidence any documents that the bank had withheld on bank-secrecy law grounds.

Over Arab Bank's objection, District Judge Nina Gershon, to whom the case was then assigned, adopted the sanction recommendation, approving a further jury inference that Arab Bank's provision of services to terrorists was knowing, and prohibiting the bank from making any argument or offering any evidence of *mens rea* that might be contained in the withheld documents.   This court declined to conduct either collateral or mandamus review of the sanction order, *see Linde v. Arab Bank, PLC,*

---

[6] The bank's efforts to secure waivers of its bank secrecy obligations from such countries proved unsuccessful.

706 F.3d 92 (2d Cir. 2013), after which the Supreme Court denied a writ of certiorari, *see Arab Bank, PLC v. Linde*, 134 S. Ct. 2869 (2014).[7]

In July 2013, the case was reassigned to Judge Cogan, who declined to reconsider Judge Gershon's sanction order and who ruled that Arab Bank would not be permitted to offer evidence or arguments as to which it had failed to produce account records, specifically, evidence that it had adhered generally to counter-terrorism financing standards or that it ultimately had closed the accounts of designated terrorists.

### B. Trial

Prior to trial, Arab Bank moved for summary judgment, arguing, *inter alia*, that the ATA required proof of but-for causation, which plaintiffs could not provide. The district court denied the motion, concluding that the ATA required proof only of proximate causation for which the evidence was not insufficient as a matter of law.

In the ensuing six-week trial, which began on August 14, 2014, evidence showed that Arab Bank is a major international financial institution headquartered in Jordan and with branches throughout the world, including in New York, London, Dubai, Singapore,

---

[7] In responding to a Supreme Court request for his views, the Solicitor General faulted the district court's sanction order but opined that the matter was not properly reviewed on a mandamus petition. The Solicitor General has not sought to be heard on this appeal.

Geneva, Paris, Frankfurt, Sydney, and Bahrain. The evidence further showed that, during the Second Intifada, Arab Bank held accounts, or processed wire transfers, for known Hamas leaders and operatives.

For example, plaintiffs adduced evidence that Arab Bank executed wire transfers for Osama Hamdan, a senior Hamas spokesman, who held an account at the bank's Lebanon branch.[8] Evidence also showed Arab Bank's execution of wire transfers for Ismail Abd Al Salam Haniyeh, who operated at various times as Hamas's "prime minister" and head of its political branches. Special App'x 179. It did the same for Sheik Ahmed Yassin, a founder and spiritual leader of Hamas, and his wife. Bank employees admitted their awareness of these persons' affiliation with Hamas. Moreover, in response to interrogatories, Arab Bank admitted that, during the period relevant to this action, it processed 282 fund transfers, totaling $2,563,275, for relevant foreign terrorist entities and individuals.

Trial evidence also showed that in the same general period Arab Bank processed transfers totaling approximately $32,000,000 on behalf of purported charities known to funnel money to Hamas, including the Al Salah Islamic Society, the Nablus Zakat Committee, the Al-Tadamun Islamic Charitable Society, the Union of Good, and

---

[8] A more detailed discussion of the evidence supporting the jury's liability verdict can be found in the district court's thorough post-trial opinion. *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d at 299–310.

subsidiary organizations such as the Saudi Committee. Such charities used funds to disseminate Hamas propaganda; support Hamas-affiliated terrorists; and make payments to the families of Hamas suicide bombers, prisoners, and operatives. Some bank transfers were explicitly identified as payments for suicide bombings. *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d at 304–05 (citing letter to bank from Saudi Committee appending "lists of payments to the families of deceased individuals, whose cause of death" was "martyrdom operations," as well as reference to payment for "family of the martyr Ibrahim Abdul Karim Bani Awdah").

At the close of trial, Arab Bank requested that the district court instruct the jury on (1) the particular requirements of an "act of international terrorism" under the ATA, *see* 18 U.S.C. § 2333(a), as specified in *id.* § 2331(1); and (2) the need for plaintiffs to prove but-for causation. In denying the first request, the district court concluded that the knowing provision of financial services to terrorists in violation of the material-support statute, *id.* § 2339B, is inherently "an act of international terrorism," Joint App'x 7068, or at least an alternative means of proving the ATA's international-terrorism requirement, *see infra* at n.9 (quoting jury charge). The district court also reiterated its earlier rejection of a but-for causation requirement, and, accordingly, charged only on proximate cause.

On September 22, 2014, the second day of deliberations, the jury found Arab Bank liable under the ATA for the three terrorist attacks supporting plaintiffs' claims, among other attacks not here at issue.

14

### C. Post-Trial Proceedings

Arab Bank reiterated its jury-instruction and sanction challenges in unsuccessfully moving for a new trial, judgment notwithstanding the verdict, or certification of an interlocutory appeal. *See* Fed. R. Civ. P. 50, 59; 28 U.S.C. § 1292(b). The district court proceeded to schedule a bellwether-damages trial for August 2015. At the parties' request, that trial was adjourned to May 2016 to permit settlement discussions.

On May 24, 2016, the parties agreed to, and the district court entered, a judgment in the total amount of $100,000,000, which was designated final under Fed. R. Civ. P. 54(b). Arab Bank timely appealed. Meanwhile, the parties executed a confidential settlement agreement providing for the bellwether plaintiffs to be paid various total monetary amounts depending on whether the appeal resulted in affirmance, reversal, or vacatur of the judgment, but with no new trial to follow vacatur, and no further review of the judgment in any event.

## DISCUSSION

### I. Jurisdiction

Preliminary to discussing the merits of Arab Bank's appeal, we consider how, if at all, the parties' settlement agreement affects our jurisdiction. Although no party challenges that jurisdiction, we have an "independent obligation" to determine its existence. *In re TPG Troy, LLC*, 793 F.3d 228, 232 (2d Cir. 2015). For the reasons stated

herein, we conclude that we possess both statutory and constitutional authority to decide this appeal.

## A. Statutory Authority

We first address the statutory basis for our jurisdiction, as its absence would obviate the need to determine whether the exercise of jurisdiction would be constitutional. *See Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (declining to reach constitutional jurisdictional inquiry where no statutory basis for appellate jurisdiction existed).

Title 28 U.S.C. § 1291 affords federal courts "jurisdiction to hear timely appeals from final judgments or from partial final judgments entered pursuant to Fed. R. Civ. P. 54(b)." *Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008). Rule 54(b) authorizes a district court to enter partial final judgment "when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an 'express[] determin[ation] that there is no just reason for delay'" of entry of final judgment as to fewer than all of the claims or parties involved in the action. *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 140 (2d Cir. 2014) (alterations in original) (quoting Fed. R. Civ. P. 54(b)). As relevant here, Rule 54(b) authorizes entry of judgment in favor of a plaintiff's damages claims only where there has been a finding of liability and the court has "fixed the damages." *Western Geophysical Co. of Am. v. Bolt Assocs., Inc.*, 463 F.2d 101, 102 (2d Cir. 1972). A

grant of "partial summary judgment limited to the issue of liability, which reserves the issue of damages and other relief is not 'final' within the meaning of 28 U.S.C. § 1291," and, therefore, "not certifiable pursuant to Rule 54(b)," *Acha v. Beame*, 570 F.2d 57, 62 (2d Cir. 1978) (citing *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737 (1976)); *accord Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 110 (2d Cir. 2014).

Here, the district court expressly declined to certify an interlocutory appeal from a non-final order reflecting only the jury's liability verdict. *See* 28 U.S.C. § 1292(b) (authorizing district court to certify otherwise unappealable order that involves "controlling question of law as to which there is substantial ground for difference of opinion" and resolution of which "may materially advance the ultimate termination of the litigation"). Only after the parties stipulated to a total $100,000,000 damages award did the district court enter judgment "fix[ing] the damages" in that meaningful amount. *Western Geophysical Co. of Am. v. Bolt Assocs., Inc.*, 463 F.2d at 102. The entry of that partial final judgment under Rule 54(b) confers on us the statutory authority to decide this appeal.

The finality of that judgment is evident from the fact that, if this court were to affirm, the bellwether plaintiffs would be entitled to the $100,000,000 damages identified in the judgment and could sue for enforcement. Arab Bank's obligations under the settlement agreement to pay different amounts, depending on the outcome of this appeal, would have to be enforced in a contract action. *See, e.g., Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (explaining that motion to enforce settlement agreement is

"fundamentally a claim for breach of a contract"). But that agreement does not affect the $100,000,000 judgment. Indeed, the agreement states that, in the event of affirmance, the $100,000,000 final judgment is subsumed within its stated obligation to pay the bellwether plaintiffs a still higher amount.

In short, this is not a case in which the $100,000,000 damages award identified in the Rule 54(b) judgment is merely illusory, securing access only to our opinion on liability while retaining the option to litigate damages anew on remand. *See Rabbi Jacob Joseph Sch. v. Province of Mendoza*, 425 F.3d 207, 210–11 (2d Cir. 2005) (holding that parties may not engage in "end-run around the final judgment rule" by appealing voluntary dismissal without prejudice (internal quotation marks omitted)); *see also Microsoft Corp. v. Baker*, 137 S. Ct. at 1712, 1715 (reaching same conclusion where parties voluntarily dismissed action with prejudice but reserved right to "revive" claims on reversal). Rather, plaintiffs will be entitled to no less than $100,000,000 if we affirm the challenged judgment. The parties' provision for plaintiffs to recover different, even greater, amounts depending on the outcome of this appeal thus bears not so much on the statutory requirement of finality as on the constitutional requirement of adversity, which we next address.

## B. Constitutional Authority

Article III's limitation of federal court jurisdiction to "Cases" and "Controversies," U.S. Const. art. III, § 2, has been interpreted to require that an "actual controversy" between the parties "be extant

at all stages of review, not merely at the time the complaint is filed," *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016) (internal quotation marks omitted); *see ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (holding that where intervening circumstance deprives plaintiff of personal stake in outcome of lawsuit at any point during litigation, action can no longer proceed). Ordinarily, a case is mooted by settlement, as the "losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari." *LaForest v. Honeywell, Int'l Inc.*, 569 F.3d 69, 73 (2d Cir. 2009) (internal quotation marks omitted). Although the losing party may seek to appeal so much of a consent judgment as to which he "expressly preserved" an objection, our jurisdiction over the dispute remains limited by the case-or-controversy requirement, and "may not be cured by consent of the parties." *Id.* at 74 (internal quotation marks omitted).

Applying these principles here, we conclude that we possess constitutional authority to address this appeal because the parties continue to dispute the legal basis for the jury's liability determination and retain a significant financial stake in this appeal regardless of its outcome as reflected in the considerable variances in recovery provided in the parties' settlement agreement. Under similar circumstances, the Supreme Court has concluded that an agreement "liquidat[ing]" the damages to which a party is entitled based upon the decision to grant or deny certiorari, affirm, or reverse, precluded a mootness determination because the respondents' "continued active pursuit of monetary relief,"

demonstrated a "definite and concrete [case], touching the legal relations of parties having adverse legal interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371 (1982) (internal quotation marks omitted); *see Nixon v. Fitzgerald*, 457 U.S. 731, 744 (1982) (same, where agreement entered after certiorari petition left parties with "considerable financial stake" in resolution of issue on appeal). Our sister circuits are in accord on the effects of similar high-low settlement agreements. *See In re Odes Ho Kim*, 748 F.3d 647, 652 (5th Cir. 2014) (holding dispute not moot where value of promissory note would be "adjusted" based on resolution of appeal); *United States ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 641 (6th Cir. 2002) (same, where parties settled $25 million of disputed value, but agreed to payment of additional $15 million contingent upon outcome of appeal); *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 224 (3d Cir. 2000) (same, where parties remained "truly adverse with respect to the critical legal issue that they ask us to resolve" and review of private settlement agreement demonstrated "significant stake in the outcome"). We identify no material difference between those settlements and the parties' agreement here.

In so ruling, we distinguish this case from those in which parties, having settled a disputed legal issue, retain only a minimal stake in the litigation, and proceed on appeal solely as a means of "gambling." For example, in *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1132 (9th Cir. 2005), the creator of online pop-up discount advertisements appealed from the dismissal on personal jurisdiction grounds of its complaint, which sought a declaratory judgment that

the presentation of pop-up advertising on L.L. Bean's website did not infringe, dilute, or interfere with L.L. Bean's trademark. *See id.* at 1127–28. The Ninth Circuit concluded that the appeal was mooted by Gator.com's agreement permanently to discontinue such advertisements on the website, notwithstanding Gator.com's agreement to pay $10,000 if the dismissal was affirmed. *See id.* at 1131–32. The court reasoned that the parties had settled the issues presented in the district court—personal jurisdiction and entitlement to declaratory relief—and appealed solely to bet on the circuit court's views on the settled matters. *See id.* at 1132.

That is not this case. Arab Bank actively disputes liability, and we are satisfied, upon review of the settlement agreement, that the contingent monetary obligations presented therein represent the parties' efforts reasonably to estimate the plaintiffs' ability ultimately to procure the "relief upon which this suit was initially premised" (as well as the value of avoiding retrial or further review), not a mere "side bet" as to our views on a settled matter. *Id.*; *see Allflex USA, Inc. v. Avid Identification Sys., Inc.*, 704 F.3d 1362, 1367–68 (Fed. Cir. 2013) (contrasting agreement providing for "rebate" of less than 1% of settlement's value for prevailing on appeal with agreement providing "reasonable estimate" of value of disputed issues).

Accordingly, because we are satisfied as to both our statutory and constitutional authority to adjudicate this appeal, we proceed to the merits of Arab Bank's challenges.

## II.    The Error in Charging the "Act of International Terrorism" Element of an ATA Claim

We review an urged charging error *de novo*, but we will vacate judgment and order a new trial only where (1) the charge "misleads the jury as to the correct legal standard or does not adequately inform the jury on the law," and (2) that error was "prejudicial in light of the charge as a whole." *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017) (internal quotation marks omitted). Despite the obvious care and attention given by the district court to the many challenges presented by this case, we are obliged to identify charging error in its instruction on the ATA's "act of international terrorism" element and to order vacatur and remand.

The ATA affords a civil remedy to persons injured "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). The district court charged the jury that, as a matter of law, proof that Arab Bank had violated 18 U.S.C. § 2339B—which criminalizes the provision of material support to a designated foreign terrorist organization—necessarily proved the bank's commission of an act of international terrorism.[9] This was error.

---

[9] The district court charged as follows:

Plaintiffs must also prove that the defendant committed an act of international terrorism. Plaintiffs allege that the defendant committed an act of international terrorism by violating 18 U.S.C., that is, United States Code, Section 2339B.

As we have already observed, "international terrorism" is statutorily defined in 18 U.S.C. § 2331(1). *See supra* at Point I (quoting statute). That text states that for an act to constitute "international terrorism," it must violate federal or state law if committed within this country. *See* 18 U.S.C. § 2331(1)(A). The provision of material support to a designated terrorist organization in violation of § 2339B can certainly satisfy that *part* of the statutory definition. But, to qualify as international terrorism, a defendant's act must *also* involve violence or endanger human life. *See id.* § 2331(1)(A). Further, the act must appear to be intended to intimidate or coerce a civilian population or to influence or affect a government. *See id.* § 2331(1)(B). And it must have occurred primarily outside the territorial jurisdiction of the United States or transcend national boundaries. *See id.* § 2331(1)(C); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012) (identifying as "separate requirements" of § 2331(1) definition of international terrorism that act at issue (1) involve violence or endanger human life; (2) violate federal or state criminal law if committed in the United States; (3) appear intended to intimidate or

---

A violation of 18 U.S.C. § 2339B is itself an act of international terrorism. Therefore, I instruct you as a matter of law, if you find the plaintiffs have proved by a preponderance of the evidence, that the defendant violated section 2339B of Title 18, you must find that plaintiffs have proved that defendant committed an act of international terrorism.

Special App'x 146.

coerce civilian population, influence government policy, or affect government conduct by specified means; and (4) occur primarily outside the United States or transcend national boundaries).

We recognize that the ATA's legislative history references Congress's intent to authorize the "imposition of liability at any point along the causal chain of terrorism," including by "interrupt[ing] or at least imperil[ing] the flow of money" to terrorist groups. S. Rep. No. 102-342, at 22 (1992); *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 125 (quoting same). Nevertheless, legislative history cannot alter plain text that, as here, expressly defines the acts giving rise to liability. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *accord Whitfield v. United States*, 543 U.S. 209, 215–16 (2005); *United States v. Marcus*, 628 F.3d 36, 44 (2d Cir. 2010). Thus, the court was required to charge, and the jury obliged to find proved, the definitional requirements of § 2331(1) to find Arab Bank liable as a principal under § 2333(a).

To be sure, conduct that violates a material support statute can also satisfy the § 2331(1) definitional requirements of international terrorism in some circumstances. Most obviously, a person who voluntarily acts as a suicide bomber for Hamas in Israel can thereby provide material support to that terrorist organization while also committing an act of terrorism himself. The suicide bombing is unquestionably a violent act whose apparent intent is to intimidate

civilians or to influence governments. But the provision of material support to a terrorist organization does not invariably equate to an act of international terrorism. Specifically, and as relevant here, providing financial services to a known terrorist organization may afford material support to the organization even if the services do not involve violence or endanger life and do not manifest the apparent intent required by § 2331(1)(B).

Thus, it was incorrect to instruct the jury that a finding that Arab Bank provided material support to Hamas in violation of § 2339(B) was alone sufficient to prove the bank's own commission of an act of international terrorism under § 2333(a). To make *that* finding, the jury needed to be instructed on and to find proved all of § 2331(1)'s definitional requirements for an act of international terrorism, including those pertaining to violence or danger and the apparent intent to intimidate or influence.

*Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) (*en banc*), relied on by plaintiffs, is not to the contrary. In *Boim*, the issue was not whether material support for terrorism invariably equates to an act of international terrorism. Rather, the issue was whether a jury could find defendants who had donated money to Hamas and Hamas-affiliated charities, knowing that Hamas used such money to finance the killing of Israeli Jews, some of whom were American citizens, liable under the ATA for the 1994 Hamas murder in Israel of an American teenager. *See id.* at 690. The *Boim* defendants argued that such financial donations, as a matter of law, could not be found to be an act of international

terrorism subject to ATA liability. The Seventh Circuit rejected that argument, but not by holding that material support of terrorism is always an act of international terrorism. *See id.* Rather, *Boim* acknowledged that to succeed on an ATA claim, a plaintiff had to satisfy the definitional requirements of an act of international terrorism by proving that the conduct violating a material support statute also involved violence or endangered human life and manifested an apparent intent to coerce or intimidate civilians or to influence or affect governments. *See id.*

In concluding that a jury could find defendants' donations to satisfy these definitional requirements, *Boim* analogized "[g]iving money to Hamas" to "giving a loaded gun to a child," explaining that, while neither transfer is a violent act, both are acts "dangerous to human life." *Id.* Further, *Boim* observed that "donations to Hamas, by augmenting Hamas's resources, would enable Hamas to kill or wound, or try to kill" more people in Israel. *Id.* at 694. And given such foreseeable consequences, those donations would "appear to be intended to intimidate or coerce a civilian population or to affect the conduct of a government by assassination, as required by section 2331(1) in order to distinguish terrorist acts from other violent crimes . . . ." *Id.* (internal quotation marks omitted).

We need not here decide whether we would similarly conclude that a jury could find that direct monetary donations to a known terrorist organization satisfy § 2331(1)'s definitional requirements for an act of terrorism. *See Licci ex rel Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d at 68–69 (acknowledging *Boim* decision without

commenting on its reasoning). We conclude only that providing routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to excuse the charging error here and compel a finding that as a matter of law, the services were violent or life-endangering acts that appeared intended to intimidate or coerce civilians or to influence or affect governments. That conclusion is only reinforced by our holding, in the context of a challenge to proof of the causation element of an ATA claim, that the mere provision of "routine banking services to organizations and individuals said to be affiliated with" terrorists does not necessarily establish causation. *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 124. To be sure, the ATA's causation and terrorist act elements are distinct, and plaintiffs argue that Arab Bank's financial services to Hamas should not be viewed as routine. But that raises questions of fact for a jury to decide. Because we cannot conclude that a jury properly instructed as to all definitional requirements of § 2331(1) would have to find Arab Bank's financial services to constitute acts of international terrorism supporting ATA liability, we adhere to our conclusion that the identified charging error requires vacatur and remand. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995) (holding charging error required retrial because court could not know what jury would have done "had it received a correct instruction"); *cf. United States v. Silver*, 864 F.3d 102, 119 (2d Cir. 2017) (holding instructional error in criminal trial not harmless because it was not "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error"

(internal quotation marks omitted)); *Renz v. Grey Advert., Inc.*, 135 F.3d 217, 224 (2d Cir. 1997) (identifying instructional error as harmless in civil case because prevailing party's evidence was "so strong that a correct charge . . . would not have made a difference to the verdict").

## III. The Instructional Error Was Not Harmless so as to Permit Affirmance

Plaintiffs offer two further arguments in urging us to affirm despite such instructional error. First, they submit that the jury's causation determination was the functional equivalent of a finding that Arab Bank's actions endangered human life and appeared intended to further terrorist intimidation or coercion. Second, they maintain that Congress's post-trial enactment of JASTA to provide for "aiding and abetting" ATA liability eliminates the need to prove that Arab Bank's own actions involved violence or danger and appeared intended to intimidate or coerce civilians or to influence or affect governments. Neither argument persuades us that vacatur can be avoided.

A charging error can be deemed harmless if the court's instructions "amounted to the functional equivalent of the instruction that *should* have been given." *Rasanen v. Doe*, 723 F.3d 325, 335 (2d Cir. 2013) (emphasis in original). That is not this case. The proximate cause instruction given told the jury that it had to find that (1) Arab Bank's "unlawful acts were a substantial factor in the sequence of events . . . causing plaintiffs' injuries," and (2) those

"injuries were reasonably foreseeable or anticipated as a natural consequence of such acts." Special App'x 150. The instruction did not require the jury to find that the services themselves involved violence or danger to life and that they had the apparent intent to intimidate, coerce, influence, or affect stated in § 2331(1)(B). Plaintiffs submit that we required no showing of apparent intent in *Weiss v. National Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014). The argument merits little discussion because in *Weiss* we addressed the "scienter requirement" of the predicate material support violation, not the definitional requirements of the ATA. *Id.* at 207–08. Thus, the jury's finding of causation was not the equivalent of a finding that Arab Bank committed an act of international terrorism as defined in § 2331(1) so as to render the identified charging error harmless.

Plaintiffs' JASTA argument requires a somewhat different analysis. We agree that plaintiffs are entitled to the benefits of JASTA's expansion of ATA liability to aiders and abettors on this appeal. *See Rasanen v. Doe*, 723 F.3d at 338 (holding that jury instructions are properly reviewed in light of law as it stands at time of appeal). We further agree that, under an aiding and abetting theory of ATA liability, plaintiffs would not have to prove that the bank's own acts constitute international terrorism satisfying all the definitional requirements of § 2331(1). Nevertheless, we cannot conclude that the identified error in charging Arab Bank as a principal is harmless because, in the absence of any aiding and abetting charge here, we cannot conclude

that Arab Bank's secondary liability on that theory was proved as a matter of law. *See Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d at 439; *cf. United States v. Silver*, 864 F.3d at 119. The possibility of liability on that theory would have to be pursued at a retrial on remand.

In reaching that conclusion, we are mindful that Congress, in enacting JASTA, instructed that the "proper legal framework for how [aiding and abetting] liability should function" under the ATA is that identified in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5). In *Halberstam*, the District of Columbia Circuit observed that, in the civil context, aiding and abetting liability requires proof of three elements: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury," (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and (3) "the defendant must knowingly and substantially assist the principal violation." 705 F.2d at 487. *Halberstam* further identified six factors relevant to determining "how much encouragement or assistance is substantial enough" to satisfy the third element: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance. *Id.* at 483–84.

Because this case was tried prior to JASTA's enactment, the jury was not instructed, and made no findings, as to the *Halberstam*

elements of civil aiding and abetting, or the factors relevant to the substantial assistance element. We do not understand the first element to be in dispute: Hamas operatives carried out the three attacks underlying plaintiffs' ATA claims, and those attacks satisfy all the definitional requirements of international terrorism stated in § 2331(1). From the charge given and the verdict returned, we can also assume that the jury found Arab Bank to have provided material support in the form of financial services to what it knew was a designated terrorist organization. *See* Special App'x 146–48, 161–64. But aiding and abetting an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*. Aiding and abetting requires the secondary actor to be "aware" that, by assisting the principal, it is itself assuming a "role" in terrorist activities. *Halberstam v. Welch*, 705 F.2d at 477. Such awareness may not require proof of the specific intent demanded for criminal aiding and abetting culpability, *i.e.*, defendant's intent to participate in a criminal scheme as "something that he wishes to bring about and seek by his action to make it succeed." *Rosemond v. United States*, 134 S. Ct. 1240, 1248 (2014) (internal quotation marks omitted).[10] Nor does awareness require proof that Arab Bank knew of the specific attacks at issue when it provided financial services for Hamas. What the jury did have to

---

[10] This is not to say that evidence of intent is irrelevant to an ATA aiding and abetting claim. Rather, evidence of the secondary actor's intent can bear on his state of mind, one of the factors properly considered in deciding whether the defendant's assistance was sufficiently knowing and substantial to qualify as aiding and abetting. *See Halberstam v. Welch*, 705 F.2d at 484.

find was that, in providing such services, the bank was "generally aware" that it was thereby playing a "role" in Hamas's violent or life-endangering activities. *Halberstam v. Welch*, 705 F.2d at 477. This is different from the *mens rea* required to establish material support in violation of 18 U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 16–17 (2010).[11]

There is some record evidence that might permit a jury, properly instructed as to aiding and abetting, to infer the requisite awareness. For example, certain communications dating from as early as 2001, *i.e.*, before the attacks here at issue, could have alerted the bank that the transfers being requested therein were payments for suicide bombings. *See Linde v. Arab Bank, PLC*, 97 F. Supp. 3d at 304. But we cannot conclude that such evidence, as a matter of law, compels a finding that the bank was aware that by processing future transfers it was playing a role in violent or life-endangering acts whose apparent intent was to intimidate or coerce civilians or to affect a government. Thus, we are obliged to vacate and remand for

---

[11] Other material support statutes require proof of different *mens rea*. *See* 18 U.S.C. § 2339A (requiring proof of knowledge or intent that material support be used in preparation for or in carrying out specified crimes); *id.* § 2339C (requiring proof of unlawful and willful collection or provision of funds with knowledge funds to be used, at least in part, to carry out terrorist activities). Neither of these statutes was charged to the jury here and, thus, we consider harmlessness only by reference to § 2339B.

a jury to decide that question. *See Catanzaro v. Weiden*, 140 F.3d 91, 95 (2d Cir. 1998) (noting that "traditionally a jury resolves questions about a tortfeasor's state of mind"); *Harrison v. Mo. Pac. R. Co.*, 372 U.S. 248, 249 (1963) (holding trial court "improperly invaded the function and province of the jury" in resolving, as a matter of law, question of whether defendant possessed requisite knowledge).

We reach the same conclusion as to the substantial assistance element of aiding and abetting. As already noted, *Halberstam* explains that whether a defendant's assistance is "substantial enough" to constitute aiding and abetting requires consideration of multiple factors: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance. 705 F.2d at 484–85. Disputed facts pertinent to these factors and the weight to assign such facts are not matters that can be determined as a matter of law from the record in this case. *See United States v. Norman*, 776 F.3d 67, 79 (2d Cir. 2015) ("[T]he weight [evidence] is to be accorded is a matter for argument to the factfinder, not a ground for reversal on appeal."); *Catanzaro v. Weiden*, 140 F.3d at 95. Thus, even if a properly charged jury could conclude that Arab Bank's financial services provided substantial assistance to Hamas's murderous activities so as to support aiding and abetting liability, we cannot conclude that such a finding is compelled as a matter of law, thereby avoiding the need for vacatur and remand.

Nor is a different conclusion warranted because the jury, in finding causation, was instructed that it had to find that Arab Bank's provision of financial services to Hamas was a "substantial and identifiable cause of the injury that plaintiffs claim." Special App'x 150. Even if we assume *arguendo* the correctness of this instruction—which Arab Bank challenges, *see infra* at Point IV—the substantiality inquiry for causation is not identical to the substantiality inquiry for aiding and abetting. Causation focuses on the relationship between an alleged act of international terrorism and a plaintiff's injury. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (explaining that, at common law, proximate causation demands "some direct relation between the injury asserted and the injurious conduct alleged"). By contrast, aiding and abetting focuses on the relationship between the act of international terrorism and the secondary actor's alleged supportive conduct. *See Halberstam v. Welch*, 705 F.2d at 488 (explaining that aiding and abetting requires proof that defendant "knowingly and substantially assist the principal violation"). While some evidence may bear on both questions, because the inquiries are thus different, we are not persuaded that the jury's causation finding means it would have to have found aiding and abetting liability if properly charged on that theory. That conclusion is only reinforced by the fact that the causation finding at trial rested on a predicate finding that Arab Bank had itself committed an act of international terrorism, which, as we have already explained *supra* at Point III, cannot stand because it is based on instructional error.

In sum, because at trial, on a theory that Arab Bank had itself committed an act of international terrorism injuring plaintiffs, the jury was incorrectly instructed as to the statutory requirements of such an act, its verdict finding Arab Bank liable under the ATA cannot stand. The error was not rendered harmless by either (1) the jury's causation finding, which did not require consideration of all elements of an act of international terrorism; or (2) JASTA's amendment of the ATA to authorize aiding and abetting liability because, even if the record would permit a jury finding of aiding and abetting, in the absence of any aiding and abetting instruction or finding, we cannot conclude that secondary liability is compelled as a matter of law. Accordingly, we vacate the challenged judgment and remand the case to the district court.

## IV. Sufficiency Challenge to Causation Finding

Arab Bank argues that, rather than vacate and remand, we should reverse the challenged judgment because the trial evidence was legally insufficient to prove causation under either the proximate cause standard charged to the jury or the but-for causation standard that (the bank contends) should have been charged. The argument merits little discussion in light of JASTA.

The bank's causation challenge is based on plaintiffs' trial theory that Arab Bank had itself committed an act of international terrorism by providing material support to Hamas in the form of financial services, which support was a proximate cause of plaintiffs' injuries. We need not decide whether the facts here can support

35

such a finding despite *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 124 (holding that mere provision of routine banking services to terrorists does not necessarily support causation). After JASTA, plaintiffs are not limited to proving their ATA claim on a theory of Arab Bank's primary liability. They can now urge Arab Bank's liability on the alternative theory that it aided and abetted acts of terrorism by others, which acts caused plaintiffs' injuries. *See* 18 U.S.C. § 2333(d)(2), Statutory Note (Effective and Applicability Provisions). Arab Bank does not—and cannot—dispute the sufficiency of the evidence to prove that the Hamas terrorists who committed the three attacks at issue caused plaintiffs' injuries, whether as a matter of proximate or but-for causation. Thus, causation provides no ground for reversal.

Rather, vacatur and remand are warranted for the reasons stated in the preceding points: (1) instructional error precludes affirming judgment on a primary theory of liability against Arab Bank; and (2) to the extent plaintiffs can now rely on JASTA, Arab Bank's liability as an aider and abettor cannot here be determined as a matter of law but must be decided by a jury on remand.

If this case were, in fact, to be retried on remand, it might be appropriate for us to address Arab Bank's argument as to the standard of causation required for ATA liability, although, as we have noted, it appears undisputed that, on a theory of aiding and abetting liability, there can be no question that Hamas acts of terrorism satisfy both the proximate and but-for causation standards. But, as Arab Bank concedes, once we vacate the

judgment and remand on any ground supporting a new trial, we need not consider its other arguments urging that relief because the parties' settlement agreement specifies that there will be no retrial in any event. Rather, vacatur and remand will result in a specified monetary payment. Thus, having determined that charging error on the ATA's international terrorism element warrants vacatur and remand, we do not further consider the bank's challenges as to either the causation standard charged or the imposition of discovery sanctions.

## CONCLUSION

To summarize, we hold as follows:

1. We have jurisdiction to hear this appeal from a partial final judgment entered pursuant to Fed. R. Civ. P. 54(b), and the parties' settlement agreement providing for Arab Bank to pay plaintiffs different amounts depending on the outcome of this appeal, does not upset the finality of that judgment or deprive us of a case or controversy.

2. To constitute an act of international terrorism supporting civil liability under the ATA, *see* 18 U.S.C. § 2333(a), a jury must find that the charged act satisfies the definitional requirements of international terrorism stated in *id.* § 2331(1).

3. In this ATA action, it was prejudicial error requiring vacatur and remand to charge the jury that proof of Arab Bank's material support to a known terrorist organization in violation of *id.* § 2339B was by itself sufficient to prove the bank's own commission

of an act of international terrorism as a matter of law. Conduct such as the provision of financial services can provide material support in violation of § 2339B without necessarily (a) involving violence or endangering human life and (b) appearing intended to intimidate or coerce civilian populations or to influence or affect governments, both statutory requirements for an ATA act of international terrorism, *see id.* § 2331(1).

4. The identified charging error was not rendered harmless by the jury's finding of causation because that determination did not require the jury to find that the bank's provision of financial services to Hamas involved the violence or danger to human life or manifested the apparent intent statutorily required for an act of international terrorism.

5. The identified charging error was also not rendered harmless by Congress's post-trial amendment of the ATA through JASTA to authorize civil claims against aiders and abettors as well as principals. Even if the evidence is sufficient to permit a jury, on remand, to find that Arab Bank aided and abetted the Hamas acts of international terrorism that injured plaintiffs, it does not compel that conclusion as a matter of law.

6. Arab Bank's sufficiency challenge to the evidence of causation does not warrant reversal because the challenge is directed at plaintiffs' trial theory that the bank itself committed an act of international terrorism. After JASTA, plaintiffs can defend against this challenge on an aiding and abetting theory of bank liability. There is no dispute that the Hamas attacks that Arab Bank

38

is supposed to have aided and abetted caused plaintiffs' injuries, both as a matter of proximate and but-for causation.

7.    We need not here decide whether, on remand, the district court should charge the jury as to proximate or but-for causation as such a decision would only be necessary in the event of a new trial, which the parties, in a settlement agreement, have agreed to forgo in lieu of a specified money payment.

8.    The parties' agreement to forgo a new trial also makes it unnecessary to decide whether the district court acted within its discretion in imposing the challenged discovery sanction.  As the parties concede, a decision by this court to vacate and remand on any one ground triggers their settlement agreement, thus avoiding the need to decide whether other grounds also warrant this relief.

Accordingly, we VACATE the district court's judgment and REMAND the case to the district court for further proceedings consistent with this opinion.