UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------
                                                      :

SHOLOM GOLDSTEIN, et al.             :
                                                   :
                   Plaintiff,        :
                                                     :
     - v -                         :   1:16-CV-01681 (ILG)(RML)
                                                     :

ARAB BANK, PLC,                   :
                                                   :
                   Defendant.     :
------------------------------------------------------------:

**DEFENDANT ARAB BANK'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT
<u>PURSUANT TO FED. R. CIV. P. 12(B)(2) AND FED. R. CIV. P. 12(B)(6)</u>**

**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020-1104
Phone: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendant Arab Bank plc*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ...............................................................................................2

I.  PLAINTIFFS FAIL TO STATE AN ATA CLAIM UPON WHICH RELIEF
    CAN BE GRANTED ............................................................................2

    A.  Plaintiffs' Interpretation Of The ATA Is At Odds With The Statutory Text
        And Controlling Authority ................................................................2

    B.  Plaintiffs Fail To State A Claim For Primary Liability Under § 2333(a)
        (Counts I-III) ...................................................................................4

        1.  The FAC Fails Plausibly To Allege That The Bank Committed An
            Act Of "International Terrorism." ................................................4

            a)  Violation Of An ATA Material Support Provision Meets
                Only One Part Of The Four-Part "International Terrorism"
                Definition ...........................................................................5

            b)  Plaintiffs Fail Plausibly To Allege That The Bank Violated
                The  ATA Material Support Provisions ..................................6

            c)  Plaintiffs Fail Plausibly To Allege That The Bank Engaged
                In Activities Involving "Violent Acts" Or "Acts Dangerous
                To Human Life." ...................................................................9

            d)  Plaintiffs Fail Plausibly To Allege That The Bank's
                Financial Services Were Intended To Intimidate Or Coerce
                Civilians Or Governments ....................................................10

        2.  Plaintiffs' Fail Plausibly To Allege The Causation Element Of
            Their Primary Liability Claims ....................................................10

    C.  Plaintiffs Fail To State A Claim For Secondary Liability Under §
        2333(d)(2) (Counts III-IV) .............................................................13

II.  THE FAC FAILS TO PROVIDE A SUFFICIENT BASIS FOR EXERCISING
     SPECIFIC JURISDICTION ................................................................15

CONCLUSION...........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ....................................................................................11

*Boim v. Holy Land Found. For Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) (*en banc*)................................................3, 5

*Burrage v. United States*,
134 S. Ct. 881 (2014) ..............................................................................3, 12

*Fields v. Twitter*,
881 F.3d 739 (9th Cir. 2018) ...................................................................1, 11

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011) .........................................................................7

*Gill v. Arab Bank, PLC*,
893 F. Supp. 2d 542 (E.D.N.Y. 2012)....................................................9, 16

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ..............................................................13, 14

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992) ....................................................................................11

*Hussein v. Dahabshil Transfer Services Ltd.*,
705 F. App'x. 40 (2d Cir. 2017) ...........................................................1, 8, 9

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018) ..........................................................................10, 13

*Licci v. Lebanese Canadian Bank, SAL*,
732 F. Supp. 571 (2d Cir. 2013) .................................................................16

*Licci v. Lebanese Canadian Bank, SAL*,
834 F.3d 201 (2d Cir. 2016) ........................................................................16

*Linde v. Arab Bank, PLC*,
384 F. Supp. 571 (E.D.N.Y. 2005)........................................................3, 4, 13

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) .................................................................*passim*

*Linde v. Arab Bank, PLC*,
No. 04-CV-02799..................................................................................................4

*Nat'l Ass'n of Mfrs. v. Dep't of Defense*,
138 S. Ct. 617 (2018) .........................................................................................3

*Newspaper Guild of New York, Local No. 3 of the Newspaper Guild, AFL-CIO v. NYP Holdings, Inc.*,
261 F.3d 291 (2d Cir. 2001) ..............................................................................8

*Owens v. BNP Paribas, S.A.*,
No. 17-7037, 2018 WL 3595950 (D.C. Cir. July 27, 2018)............................1, 3

*In re Parmalat Sec. Litig.*,
375 F. Supp. 2d 278 (S.D.N.Y. 2005) ...............................................................8

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) ................................................................................4

*Siegel v. HSBC Bank USA, N.A.*,
No. 17-CV-6593, 2018 WL 3611967 (S.D.N.Y. July 27, 2018) .........................14

*Stansell v. BGP, Inc.*,
09-CV-2501, 2011 WL 1296881 (M.D. Fl. Mar. 31, 2001).................................10

*Stutts v. De Deitrich Grp.*,
No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) (Glasser, J.)......................10

*In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*,
714 F.3d 118 (2d Cir. 2013) ..........................................................................4, 11

*United States v. Haipe*,
769 F.3d 1189 (D.C. Cir. 2014) .......................................................................10

*Waldman v. Palestinian Liberation Org.*,
835 F.3d 317 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 1438 (2018) ................16, 17

*Weiss v. National Westminster Bank, PLC*,
176 F. Supp. 3d 264 (E.D.N.Y. 2006) ..............................................................17

*Wultz v. Islamic Republic of Iran*,
755 F. Supp. 2d 1 (D.D.C. 2010) ......................................................................17

**Rules**

Fed. R. Civ. P. 4(k)(1)(C)..............................................................................15, 16

Fed. R. Civ. P. 12(b)(2).......................................................................................1

Fed. R. Civ. P. 12(b)(6) .................................................................................................................. 1

**Statutes**

18 U.S.C. § 2331(1) ........................................................................................................ *passim*

18 U.S.C. § 2333 ............................................................................................................. *passim*

18 U.S.C. § 2334 ................................................................................................................ 15, 16

18 U.S.C. § 2339 .................................................................................................................. 5, 6

Arab Bank plc ("Arab Bank" or "the Bank") respectfully submits this reply memorandum of law in support of its motion to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Within the last eight months, the circuit courts have issued four instructive decisions in ATA cases brought by U.S. terror victims against corporations:  *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) ("*Linde IV*"); *Hussein v. Dahabshil Transfer Services Ltd.*, 705 F. App'x. 40 (2d Cir. 2017); *Fields v. Twitter*, 881 F.3d 739 (9th Cir. 2018); and *Owens v. BNP Paribas, S.A.,* No. 17-7037, 2018 WL 3595950 (D.C. Cir. July 27, 2018).  Taken together, this body of recent authority establishes clear and exacting standards for pleading (and proving) civil claims under the ATA.

The FAC fails to meet the ATA pleading requirements established by these courts.  In apparent recognition of this fact, Plaintiffs' opposition ignores *Hussein*, *Fields*, and *Owens*— decisions issued by the Second Circuit, Ninth Circuit, and D.C. Circuit respectively, affirming the dismissal of ATA claims for failing to plead plausibly *mens rea* and causation.  Plaintiffs only address *Linde IV*, arguably because they are compelled to do so, but even then offer an erroneous interpretation that is at odds with the holding of the Second Circuit.

As demonstrated in the Bank's moving papers and further herein, the ATA's plain and unambiguous text, as applied by the circuit courts in rejecting attempts, like this, to hold corporations liable for the deranged acts of terrorists, requires the dismissal of the FAC for failure to state a claim upon which relief can be granted.

Plaintiffs also fail to demonstrate that the FAC supports the exercise of personal jurisdiction over the Bank on the facts of this case.  While Plaintiffs concede that general

jurisdiction is inapplicable, they maintain that specific jurisdiction is supported by a speculative theory that the Bank's New York business activity—consisting almost entirely of the mechanical processing of automated, electronic funds transfers—somehow "gave rise" to injuries resulting from the Bus No. 2 Attack.  However, as the Bank has already demonstrated, the Plaintiffs' jurisdictional allegations are not supported by sufficient factual matter and fail to establish the requisite nexus between the Bank's New York business activity and the Bus No. 2 Attack.

In light of Plaintiffs' failure to demonstrate how the FAC pleads a viable cause of action against the Bank under § 2333(a) or § 2333(d), without regard to the location of the Bank's alleged conduct, we address this point first.  In Point II of this brief, we focus more specifically on Plaintiffs' allegations with regard to the Bank's limited New York business activity, and demonstrate why those allegations remain patently insufficient to support the exercise of specific jurisdiction.

## ARGUMENT

**I.      PLAINTIFFS FAIL TO STATE AN ATA CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

### A.      Plaintiffs' Interpretation Of The ATA Is At Odds With The Statutory Text And Controlling Authority.

Citing legislative history and non-binding decisions, many of which have been abrogated, Plaintiffs encourage (Opp. 14-32) this Court to ignore the plain and unambiguous text of the ATA, and instead impose broad liability standards that are unmoored from the statute itself.  Plaintiffs' argument is at odds with, *inter alia*, basic rules of statutory interpretation and recent controlling Second Circuit and Supreme Court authority.

Courts interpreting the ATA are instructed to focus on its plain and unambiguous text:

- We recognize that the ATA's legislative history references Congress's intent to authorize the 'imposition of liability at any point along the causal chain of terrorism,' including by 'interrupt[ing] or at least imperil[ing] the flow of

money' to terrorist groups. … Nevertheless, ***legislative history cannot alter plain text that, as here, expressly defines the acts giving rise to liability***." *Linde IV*, 97 F. Supp. 3d at 326  (emphasis added).

- "While legislative history may help discern the meaning of an otherwise ambiguous text … it may not be used to show an intent at variance with the meaning of the text[.]  …  Nor is any reference to legislative history necessary when the meaning of a statute is clear enough on its face.  ***Section 2333 is not ambiguous, so no appeal to legislative history is necessary or helpful here***." *Owens* 2018 WL 3595950, at *10-11 (emphasis added).

These decisions provide the proper interpretative guidance that must be followed here.  *Burrage v. United States*, 134 S. Ct. 881, 889 (2014) (the courts' role is "to apply the statute ***as it is written***—even if we think some other approach might 'accord with good policy.'") (citation omitted) (emphasis added); *see also Nat'l Ass'n of Mfrs. v. Dep't of Defense*, 138 S. Ct. 617, 631-32 (2018) ("*National Association*") (holding that where a statute is "unambiguous" a court's "inquiry ***begins with the statutory text, and ends there as well***") (emphasis added)).

Arguing in the teeth of these decisions, Plaintiffs ask this Court to adopt broad liability standards on the basis of the aforementioned "causal chain" reference in the legislative history—***the exact interpretive approach found to be improper in Linde IV and Owens***.  *See, e.g.,* Opp. 17, 19, 25, 27, 32 (citing *Linde v. Arab Bank, PLC*, 384 F. Supp. 571 (E.D.N.Y. 2005) ("*Linde I*") (dismissing claims for emotional distress after finding the Bank's alleged conduct to be "too removed" from plaintiffs' injuries, but denying Bank's motion to dismiss ATA claims as contrary to Congress' intent to "'cut[ ] off the flow of money to terrorists at every point along the causal chain of violence[.]'" (citation omitted) (emphasis added))); Opp. 17-19 (citing *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*) (denying alleged Hamas fundraisers' motion to dismiss ATA claims after concluding that doing so would thwart "Congress' stated purpose of cutting off the flow of money to terrorists at every point along the chain of

3

causation.")).  Plaintiffs' reliance on a self-serving interpretation of legislative history and the superseded *Linde I* line of cases is improper and cannot save the FAC from dismissal.[1]

**B.  Plaintiffs Fail To State A Claim For Primary Liability Under § 2333(a) (Counts I-III).**

Plaintiffs now contend (Opp. 14-24) that Counts I-III of the FAC assert primary liability claims under § 2333(a).  *But see* FAC ¶¶ 143 (Count II: "… Arab Bank is secondarily liable ….")); 146 (Count III: "… Arab Bank is secondarily liable ….")).  The Bank accepts Plaintiffs' clarification for the purposes of this motion.

The parties dispute (1) whether the FAC plausibly alleges that the Bank committed an act of "international terrorism," as defined in § 2331(1), and (2) whether the FAC plausibly alleges that Plaintiffs' injuries were caused "by reason of" an act of "international terrorism" committed by the Bank.  *Compare* Br. 13-15, *with* Opp. 17-20.

**1.  The FAC Fails Plausibly To Allege That The Bank Committed An Act Of "International Terrorism."**

In order to plead the act of "international terrorism" element of an ATA primary liability claim, the FAC must contain sufficient factual matter to support a reasonable inference that ***the Bank*** engaged in activities that:

(A) **[1]** involve violent acts or acts dangerous to human life that are **[2]** a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State,

---

[1]     Plaintiffs' considerable emphasis (Opp. 17, 19, 25, 27, 32) on *Linde I*, one of the earliest decisions interpreting § 2333(a), is especially curious since the *Linde* court itself acknowledged that *Linde I* was abrogated by *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) and *In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank)*, 714 F.3d 118 (2d Cir. 2013).  *See Linde v. Arab Bank, PLC,* No. 04-CV-02799, Sum. J. Hr'g Tr. at 29:1-5 (Apr. 24, 2013) ("*[M]any of [my earlier decisions] have really gone by the board.  So we, start fresh … when The Circuit has spoken.*" (Gershon, J.)) ("***Linde II***") (*Linde* ECF No. 943) (emphasis added).

(B) **[3]** appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) **[4]** occur primarily outside the territorial jurisdiction of the United States.

18 U.S.C. § 2331(1)(A)-(C). Plaintiffs contend (Opp. 14-20) that the FAC adequately alleges the Bank's violation of three criminal statutes—§§ 2339A, 2339B, and 2339C (the "ATA Material Support Provisions")—and that those allegations are alone sufficient to satisfy the four-part "international terrorism" definition. Plaintiffs are wrong on both counts.

a)   **Violation Of An ATA Material Support Provision Meets Only One Part Of The Four-Part "International Terrorism" Definition.**

Plaintiffs contention (Opp. 14-20) that a violation of any ATA Material Support Provision alone suffices to satisfy all four parts of the "international terrorism" definition is based on a misreading of *Linde IV*, where the Second Circuit reached the ***exact opposite*** conclusion. In *Linde IV*, an ATA judgment was vacated after the Second Circuit determined that the trial court committed "prejudicial error" by instructing the jury that a violation of one of the ATA Material Support Provisions (there, § 2339B) "was alone sufficient to prove the bank's own commission of an act of international terrorism." *Linde IV*, 882 F.3d at 326.

Similarly unavailing is Plaintiffs' reliance (Opp. 18-19) on *Boim*, which held that "[g]iving money to Hamas" was analogous to "giving a loaded gun to a child." *Boim*, 549 F.3d at 694. In *Linde IV*, the Second Circuit distinguished *Boim*, a case brought against organized and ***prolific Hamas fundraisers***, from the case brought against the Bank:

> We conclude … that providing routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to … compel a finding that as a matter of law, the services were violent or life-endangering acts that appeared intended to intimidate or coerce civilians or to influence or affect governments.

5

*Linde IV*, 882 F.3d at 327.  In short, even if the FAC adequately alleged that the Bank violated one of the ATA Material Support Provisions—and it does not (see *infra* at I.B.1.b.)—in order to state a primary liability claim, Plaintiffs are still required to plausibly plead that the Bank engaged in "violent acts or acts dangerous to human life" that appeared to be intended to, *inter alia*, "intimidate or coerce a civilian population" or government.

**b)      Plaintiffs Fail Plausibly To Allege That The Bank Violated The ATA Material Support Provisions.**

The FAC does not contain sufficient factual matter to support a reasonable inference that the Bank:

- provided a financial service knowing or intending that it would be used in preparation for, or in carrying out, one of the enumerated crimes set forth in § 2339A(a);

- knowingly provided a financial service to a U.S.-designated Foreign Terrorist Organization, or attempted or conspired to do so, in violation of § 2339B(a)(1); and

- directly or indirectly, unlawfully and willfully provided or collected funds with the intention that such funds be used, or with the knowledge that such funds are to be used, in full or in part, in order to carry out one of the enumerated crimes set forth in § 2339(C)(a)(1).

As an initial matter, Plaintiffs fail to specify which of the numerous predicate crimes set forth in § 2339A(a) and § 2339C(a)(1) it is that they are claiming that the Bank committed.  *Compare* FAC ¶¶ 138-40, 144-46, *with* § 2339A(a) and § 2339C(a)(1).  This lack of notice alone warrants dismissal of these claims.

Plaintiffs also fail plausibly to allege that the Bank acted with the requisite *mens rea* to violate any one of the ATA Material Support Provisions.  Notably, Plaintiffs do not contend—nor can they—that financial services provided by the Bank involved an account held in the name of Hamas (the only FTO at issue in the FAC), or in the name of any recognized Hamas alias.[2]  Instead

---

[2]      *See, e.g.,* Country Reports on Terrorism, *Chapter 6. Foreign Terrorist Organizations*, U.S. Dep.'t of State, Bureau of Counterterrorism and Countering Violent Extremism (identifying

they assert that the Bank provided financial services to alleged "alter egos" and agents of Hamas (namely, alleged Hamas "front" charities and "leaders and operatives").  *See, e.g.,* FAC ¶¶ 4, 51, 123-35.   Yet ***nowhere*** in the FAC do Plaintiffs plead plausible, non-conclusory allegations sufficient to support a reasonable inference of the existence of such an alter ego or agency relationship.

Plaintiffs' conclusory allegation that the Saudi Committee is an alter ego of Hamas is not only insufficient under *Twombly*, it is also "***factually frivolous***."  *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (dismissing ATA complaint because "the courts have no obligation to entertain pure speculation and conjecture") (emphasis added).  As the Bank highlighted in its moving brief (Br. 7 n.12), a Congressional Research Service report incorporated by reference in the FAC concludes that the Saudi Committee was: (1) formed pursuant to Royal Decree of the Kingdom of Saudi Arabia; (2) overseen by high-ranking Saudi government officials; and (3) served as the main channel of Saudi aid to the Palestinian population during the relevant time period.[3]  Plaintiffs point

---

Hamas aliases as:  "the Islamic Resistance Movement; Harakat al-Muqawama al-Islamiya; Izz al-Din al Qassam Battalions; Izz al-Din al Qassam Brigades; Izz al-Din al Qassam Forces; Students of Ayyash; Student of the Engineer; Yahya Ayyash Units; Izz al-Din al-Qassim Brigades; Izz al-Din al-Qassim Forces; Izz al-Din al-Qassim Battalions."),  https://tinyurl.com/ybhm66lo (last accessed Aug. 17, 2018).

[3]      Upon the death of Saudi Crown Prince Nayif bin Abd al-Aziz Al Saudi, who served as the Supervisor General of the Saudi Committee, U.S. President Barack Obama stated that under "[u]nder [Crown Prince Nayif's] leadership, the United States and Saudi Arabia ***developed a strong and effective partnership in the fight against terrorism, one that has saved countless American and Saudi lives***."  Statement by the President on the Death of Crown Prince Nayif bin Abd al-Aziz Saud of Saudi Arabia, Embassy of the United States, Riyadh, Saudi Arabia (June 16, 2012), https://tinyurl.com/y8dd3w5y (last accessed Aug. 17, 2018).  These sentiments were echoed more recently by U.N. Secretary General Bank Ki-moon who made public remarks expressing his "heartfelt appreciation" for the humanitarian aid work of the late-Crown Prince Nayif, including for his work as Supervisor General of the Saudi Committee.  *Saudi Crown Prince Nayef honoured for work with UN agency on Palestinian projects*, United Nations (June 28, 2013), http://tinyurl.com/ybbg3qsc (last accessed Aug. 17, 2018).

to no plausible allegations in the FAC that support a reasonable inference that the Saudi Committee was an alter ego of Hamas. *See, e.g., Newspaper Guild of New York, Local No. 3 of the Newspaper Guild, AFL-CIO v. NYP Holdings, Inc.*, 261 F.3d 291, 299 (2d Cir. 2001) ("In determining whether two entities constitute alter egos, 'a number of factors are recognized as key: whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership.'" (citation omitted)); *see also In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005) ("An agency relationship exists … when there is agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent.  The element of control often is deemed the essential characteristic of the principal-agent relationship." (citations omitted)).

Similarly unavailing is the FAC's attempt to plead that the Bank possessed a criminal state of mind (as required to violate the ATA Material Support Provisions) in providing financial services to the alleged Hamas alter egos and agents at issue.  Here, Plaintiffs assert conclusory allegations (*e.g.*, FAC ¶¶ 110, 114, 121), and otherwise suggest that the Bank must have known that it was providing financial services to alter egos or agents of Hamas because their names appeared on television, radio and in newspapers (*e.g.,* FAC ¶ 100).[4]  The former allegations do not survive scrutiny under *Twombly*, while the latter allegations were recently found to be ***inadequate*** in *Hussein*—another relevant Second Circuit case that Plaintiffs ignore.  In *Hussein*, the Second Circuit affirmed the dismissal of ATA claims against bank defendants accused of, *inter alia*,

---

[4]     In fact, the FAC does not even provide this much with regard to the Bank's alleged advanced knowledge of an affiliation between the perpetrators of the Bus No. 2 Attack and Hamas. *See, e.g.*, FAC ¶¶ 110 ("Arab Bank was, on information and belief, aware of Shafiq's affiliation with Hamas …."), 114 ("Arab Bank was, on information and belief, aware of Misk's affiliation with Hamas …."); *see also* ¶ 121 ("Upon information and belief, Arab Bank was aware of the forgoing transferees' affiliations with Hamas ….").

providing financial services in the U.S. and Somalia to notorious leaders and members of al-Shabaab (an FTO based in Somalia). 705 F. App'x. at 41. In affirming dismissal of these ATA claims, the Second Circuit found plaintiffs' "celebrity-based theory of knowledge" to be inadequate because, *inter alia*, "[e]ven high-level members of terrorist organizations may be unknown to the public at large, unknown to the specific employees on duty, known only by name, or appear different in person." *Id.*

The reasoning of *Hussein* applies on all fours here, where nearly all of the alleged alter egos and agents at issue were ***not*** identified by the U.S. as having links to Hamas—much less an agency or alter ego relationship—during the relevant time period. *See* Bank Br. at 24 (citing *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 563-65 (E.D.N.Y. 2012) (finding that with the exception of a few errant transfers, out of millions processed by the Bank, none of the financial services at issue involved any party ever identified by the United States as a potential terrorist).

**c)   Plaintiffs Fail Plausibly To Allege That The Bank Engaged In Activities Involving "Violent Acts" Or "Acts Dangerous To Human Life."**

Plaintiffs have also failed to point this Court to any allegation in the FAC that supports a reasonable inference that the Bank's processing of funds transfers and provision of account services "involve[d] violent acts or acts dangerous to human life" within the meaning of § 2331(1)(A). Here again, Plaintiffs err (Opp. 17-18) by relying on a superseded line of authority and legislative history to argue that the statutory phrases "violent acts" and "acts dangerous to human life" should be interpreted broadly to capture conduct that does not comport with the regular meaning of those terms. As discussed *supra* at I.A., courts are instructed to apply the plain text of the ATA and, when doing so, give words their plain, ordinary and literal meaning. No court faithfully engaged in this analytic exercise has found—nor could they—that allegations of financial services in the form of deposits, withdrawals, or funds transfers, ***as alleged here***, can

9

satisfy the "violent acts" or "acts dangerous to human life" part of the four-part "international terrorism" definition. *See, e.g.,* Bank Br. at 14 (citing *Stutts v. De Deitrich Grp.*, No. 03-CV-4058, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) (Glasser, J.)).  Plaintiffs provide no reason why a different result should be reached here.

> **d)  Plaintiffs Fail Plausibly To Allege That The Bank's Financial Services Were Intended To Intimidate Or Coerce Civilians Or Governments.**

Finally, Plaintiffs have also failed to demonstrate how the FAC plausibly alleges that a reasonable observer of the Bank's alleged provision of financial services would conclude that the Bank acted with the apparent purpose of intimidating or coercing civilians or governments, as required to satisfy the definitional requirement set forth in § 2331(1)(B).  *See* Bank Mem. at 14-15 (citing *Jesner v. Arab Bank, PLC,* 138 S. Ct. 1386, 1395 (2018); *United States v. Haipe*, 769 F.3d 1189, 1193 (D.C. Cir. 2014); and *Stansell v. BGP, Inc.*, 09-CV-2501, 2011 WL 1296881 (M.D. Fl. Mar. 31, 2001)).  The absence of such well-pled allegations warrants dismissal of Plaintiffs' § 2333(a) claims.  *Linde IV*, 882 F.3d at 326-27.

> **2.  Plaintiffs' Fail Plausibly To Allege The Causation Element Of Their Primary Liability Claims.**

Plaintiffs again cite (Opp. 20-24) to a superseded and non-binding line of cases that relied on a loose interpretation of decades-old legislative history, in arguing that the "by reason of" language in § 2333(a) should ***not*** be accorded its ordinary meaning.  Once again, Plaintiffs' argument is at odds with basic rules of statutory interpretation and recent circuit court precedent. *See supra* I.A.

As the Bank detailed in its moving brief (Br. 16-18), the statutory phrase "by reason of" requires Plaintiffs to plausibly allege that an act of international terrorism committed by the Bank

was a "but for" factual cause, and direct proximate cause, of the Bus No. 2 Attack. Following the

same rules of statutory interpretation set forth *surpa* I.A., the Ninth Circuit recently explained:

> [W]e assume that because Congress has used "the same words"—"by reason of"—
> in the ATA as it used previously in the Sherman, Clayton, and Racketeer Influenced
> and Corrupt Organizations (RICO) Acts, Congress intended these words to "have
> the same meaning that courts had already given them" in those contexts.

*Fields*, 881 F.3d at 744 (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Applying this analysis, the Ninth Circuit concluded that the proximate causation element of a

§ 2333(a) claim requires a showing that the defendant's conduct "'led directly to the plaintiff's

injuries.'"  *Id.*, 881 F.3d at 745 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461

(2006)).  This "directness" requirement is consistent with "[t]he general tendency of the law, in

regard to damages at least, … not to go beyond the first step" in assigning liability.  *Holmes*, 503

U.S. at 271; *accord In re Terrorist Attacks on Sept. 11, 2001 (Al Rajhi Bank), 714 F.3d 118, 123

(2d Cir. 2013)* (dismissing ATA claims brought against defendants accused of making donations

to al Qaeda "front" charities after concluding that there were no plausible allegations that the

defendants' donations were "actually transferred to Al Qaeda and aided in the September 11, 2001

attacks.").

The FAC fails to assert sufficient factual matter to support a reasonable inference that the

Bank's alleged provision of *financial services* "led directly" to the Bus No. 2 Attack, as is required

to plead proximate causation under § 2333(a).  Plaintiffs argue (Opp. 22) that the FAC sufficiently

alleges that the Bank's processing of certain funds transfers—"namely the Alleged Bader

Transfer(s) … (FAC at ¶¶ 44, 73, 116, 120-22)"—led directly to the Bus No. 2 Attack.  However,

the only arguably relevant allegation they cite in support of this contention (FAC ¶ 120) is entirely

conclusory and cannot survive scrutiny under *Twombly*:  "Upon information and belief, transfers

[were] … effectuated to Qassam Brigades Commander Ahmad Bader, who then utilized said

monies, either alone or together with monies from separate transfer to other leaders of Hamas …
to fund and carry out the [Bus No. 2 Attack]."  Moreover, as the Bank explained in its moving
brief (Br. 10-12, 16-18), the FAC fails entirely to allege the requisite direct connection between
any of the other alleged financial services at issue and the Bus No. 2 Attack.

The FAC also fails plausibly to allege that the Bus No. 2 Attack "would not have occurred
in the absence of—that is, but for—the defendant's conduct," as is required to plead factual
causation under § 2333(a).  Plaintiffs correctly note (Opp. 16-18) that their preferred line of non-
binding, and largely abrogated, case law has declined to impose a "but for" causation requirement
for § 2333(a) claims.  But Plaintiffs, like the cases that they rely upon, base their argument on
select provisions of legislative history, rather than on the "by reason of" text incorporated into §
2333(a).  Opp. 24 ("Congress opted to create an ATA remedy capable of imposing liability up the
'causal chain of terrorism' to 'imperil the flow of money.'  S. Rep. No. 102-342 (1992).  To now
impose a 'but for' requirement would thwart the intent of Congress.").  As discussed *supra* I.A.,
this approach to interpreting the elements of the § 2333(a) tort has been ***expressly rejected*** by the
Second Circuit, among other courts.  And it also conflicts with the Supreme Court's insistence that
"the phrase, 'by reason of,' requires ***at least*** a showing of 'but for' causation."  *Burrage v. United
States*, 134 S. Ct. 881, 889 (2014) (emphasis added).

For these reasons, Plaintiffs' failure to adequately plead the proximate and factual
causation elements of their primary liability claims provides two independent grounds for
dismissing their primary liability claims.

### C. Plaintiffs Fail To State A Claim For Secondary Liability Under § 2333(d)(2) (Counts III-IV).

Section 2333(d)(2) of the ATA provides a remedy against those who aid and abet, or conspire with, "the person who committed … an act of international terrorism" that resulted in injury to U.S. nationals (or their estates, survivors, or heirs). Relying again on *Linde I* and its progeny, Plaintiffs argue (Opp. 24-32) that secondary liability under the ATA should be liberally construed. But that argument is at odds with *Linde IV* and *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)—the case that provides the "legal framework" that applies here. Br. 19 (citing Justice Against Sponsors of Terrorism Act ("JASTA"), Public Law No. 114-222, at § 2(a)(5) (114th Cong.) (Sept. 28, 2016)).

In *Linde IV*, the Second Circuit determined that a core requirement for stating an ATA secondary liability claim against a bank is the assertion of plausible allegations that the defendant "in providing [financial] services, was generally aware that it was thereby playing a role in [an FTO's] violent or life-endangering activities." 882 F.3d at 329. Allegations that a bank knowingly provided financial services to an FTO are not alone sufficient to state a claim. *Id.*

*Linde IV* accords with the approach taken in *Halberstam* and acknowledges the realities of the international payments system. Funds transfers totaling more than $1.5 trillion are electronically processed through the New York banking system *every day*. Br. 5 (citation omitted). As the Supreme Court has recognized, the processing of these transfers "is an entirely mechanical function [that] occurs without human intervention in the proverbial 'blink of an eye,'" such that "individual supervision is simply not a systemic reality." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1395 (2018) (internal quotation marks and citation omitted).

For these reasons, ATA secondary liability claims brought against international banks by victims of hotel bombings in Amman, Jordan, were recently dismissed at the pleading stage for

failing to "show in a plausible, non-conclusory fashion that the defendants knowingly aided or abetted [an FTO's] violent or life-endangering activities." *Siegel v. HSBC Bank USA, N.A.*, No. 17-CV-6593, 2018 WL 3611967, at *5 (S.D.N.Y. July 27, 2018).  The *Siegel* court too recognized the need for caution in the context of secondary liability suits brought under the ATA against banks:

> Because money is fungible and because the international banking system depends on cooperation among financial institutions across borders, it is particularly important to focus with care in cases like this on each of the necessary elements to a finding that [§ 2333(d)] has been violated.

*Siegel*, 2018 WL 3611967, at *5.  This reasoning applies with equal or greater force here, where the defendant is a bank that is recognized by the United States to be a "***constructive partner … in working to prevent terrorist financing***."  Br., Ex. 2 at 20.

As the Bank demonstrated in it moving brief (Br. 19-24), *Halberstam* extended the reach of liability to a secondary actor on the compelling facts of that case—the defendant was one partner in a two-person team that engaged in a years-long criminal enterprise involving concealing and laundering the proceeds of armed robberies.  In finding it appropriate to impose liability for the fatal consequences of an armed robbery on the defendant, who was engaged in the non-violent side of the "business," *Halberstam* analogized her role to that of a get-away driver who takes part in an armed bank robbery.  *See Halberstam*, 705 F.2d at 477-78.  No such relationship exists here between the Bank and the person(s) who committed the Bus No. 2 Attack.

Plaintiffs offer no compelling response to the detailed analysis (Br. 19-24) of the inadequacy of their allegations to assert claims against the Bank for aiding and abetting, or conspiring with, Hamas to kill a national of the United States.  FAC ¶¶ 147-62.  As set forth *supra* at I.B., the FAC does not sufficiently allege that the Bank had knowledge that in providing the banking services at issue it was (1) knowingly providing substantial assistance to Hamas itself and

(2) knowingly taking part in Hamas's violent activities. As such, Plaintiffs' secondary liability claims must be dismissed.

## II. THE FAC FAILS TO PROVIDE A SUFFICIENT BASIS FOR EXERCISING SPECIFIC JURISDICTION.

In its moving brief, the Bank demonstrated (Br. 8-13) that dismissal for lack of general and specific personal jurisdiction is required because, *inter alia*, the FAC contains no well-pled allegations that the Bank is "at home" in this forum, nor does the FAC plausibly allege that Plaintiffs' claims arose from the Bank's New York banking activity. In response, Plaintiffs concede (Opp. 5) that general jurisdiction is absent, but argue (Opp. 6-13) that the exercise of specific jurisdiction is appropriate because: (i) allegations that the Bank's New York office ("ABNY") processed funds transfers involving charities and individuals that allegedly maintained some "affiliat[ion] with Hamas" are sufficient for purposes of exercising New York's long arm jurisdiction without offending the Constitution; and (ii) under Fed. R. Civ. P. 4(k)(1)(C), the fact that the Bank was served within the United States is alone sufficient to establish jurisdiction under § 2334 of the ATA, which authorizes nationwide service of process. Plaintiffs are mistaken on both points.

Plaintiffs concede (Opp. 6-7) that they bear the burden of establishing that this Court has specific jurisdiction over the Bank *and* that their burden can only be satisfied if the FAC plausibly alleges that (i) the Bank transacted business within New York, and (ii) their claims "arise from" that business activity. In its moving brief (Br. 9-13), the Bank detailed why the FAC fails plausibly to allege that Plaintiffs' claims "arise from" the Bank's limited New York business activity.

In this case, Plaintiffs filed their claims with the benefit of a well-developed discovery record in the *Linde* and *Gill* cases, including the Bank's production of 200,000 funds transfer records and volumes of internal Bank policy and procedure manuals, among other documents.

With these documents in hand, Plaintiffs have also identified the culprits responsible for carrying out the Bus No. 2 Attack. Yet as set forth in the Bank's moving brief (Br. 10-12), the FAC contains no credible allegations that the Bus No. 2 Attack terrorists received financial services from the Bank that transited through New York. This fact, together with the voluminous factual record already available to Plaintiffs, compels dismissal for failure plausibly to plead a basis for the exercise of specific jurisdiction, and moots any argument that such a result would be premature in the absence of jurisdictional discovery.[5]

Plaintiffs argument (Opp. 11), that service of process on the Bank within the United States alone suffices to establish specific jurisdiction under Fed. R. Civ. P. 4(k)(1)(C) & § 2334, is at odds with *Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 328 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 1438 (2018)—another case that Plaintiffs ignore. In *Waldman,* the Second Circuit vacated a $655.5 million ATA jury verdict after concluding that there was no adequate basis to exercise jurisdiction over the defendants ***despite the fact that they were both properly served within the United States***. As the Second Circuit made clear in *Waldman,* merely demonstrating that proper service was effected within the United States does not eliminate the necessity of making

---

[5]       In opposing the Bank's motion, Plaintiffs rely extensively (Opp. 9-12) on *Licci v. Lebanese Canadian Bank, SAL*, 732 F. Supp. 571 (2d Cir. 2013). However, critical to establishing the substantial nexus between the Lebanese bank's transactions in New York and the claims of the *Licci* plaintiffs was that the wire transfers identified in that case on behalf of its customer were knowingly "executed wire transfers using its correspondent account in New York" which were used to fund the attacks that caused plaintiffs' injuries. *Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 207 (2d Cir. 2016). Here, for the reasons discussed above and in the Bank's moving papers, the FAC contains no such credible allegations linking any financial transaction through the Bank's New York branch to the Bus No. 2 Attack.

a further inquiry into "whether jurisdiction over [an ATA defendant] may be exercised consistent with the Constitution." *Id.* at 328.[6]

### CONCLUSION

For the reasons set forth herein and in the Bank's moving papers, Plaintiffs' FAC should be dismissed in its entirety for failing to assert sufficient factual matter to state a claim under Section 2333(a) or Section 2333(d)(2) of the ATA, or to establish a *prima facie* basis for this Court to exercise specific jurisdiction over the Bank on the facts of this case.

Dated: August 22, 2018

Respectfully submitted,

**DLA Piper LLP (US)**

By:    /s/ *Jonathan D. Siegfried*
Jonathan D. Siegfried
Douglas W. Mateyaschuk II
1251 Avenue of the Americas
jonathan.siegfried@dlapiper.com
douglas.mateyaschuk@dlapiper.com
New York, NY 10020-1104
(212) 335-4500

*Counsel for Arab Bank plc*

Of Counsel:

Amanda L. Liverzani

---

[6]    Instead of addressing *Waldman*, Plaintiffs cite (Opp. 11) to *Weiss v. National Westminster Bank, PLC*, 176 F. Supp. 3d 264, 283 (E.D.N.Y. 2006) and *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 32 (D.D.C. 2010), two non-binding decisions that nevertheless agree that "[n]ationwide service of process ***does not*** dispense with the requirement that an exercise of personal jurisdiction comport with the Due Process Clause."  (Emphasis added).